WATKINS and others vs. THE CITY OF MILWAUKEE and another.

*August 30 — September 19, 1882.*

ASSESSMENTS: EQUITY. *When the sale of lots for an assessment valid at law, will not be restrained.*

The complaint alleges a change in the established grade and the raising of the street whereon plaintiffs' lots abut; that thereby, and by the failure of the city to build proper sewers, water was turned in upon and left standing upon said lots, creating a nuisance; that the city ordered the abatement of such nuisance by plaintiffs at their own expense; that, upon their refusal to abate the same, the

city, by contract, procured the abatement thereof by filling the lots, and issued certificates for the work to the contractor; that such certificates were carried into the tax roll and assessed as a tax against the lots; that portions of the lots were sold for the non-payment of such assessment and were bid in by the city; and that, unless enjoined, the city treasurer would assign the certificates of the sale and issue tax deeds thereon, and thus create a cloud on the plaintiffs' title.    The prayer is for an injunction and to have the certificates set aside.    *Held* on demurrer:

1. There being a nuisance in fact the city had jurisdiction to abate it, and, the proceedings being regular, the assessment could not be held void at law.    *Smith v. Milwaukee*, 18 Wis., 63.

2. Compensation for the injury to the lots caused by raising the street must, in the absence of any allegation to the contrary, be presumed to have been fully made by filling up the lots.

3. It does not appear that the plaintiffs have not actually been benefited to the amount of the assessment, by raising the street and filling the lots. The complaint fails, therefore, to state a cause of action entitling them to equitable relief.

APPEAL from the Circuit Court for *Milwaukee* County. This is an appeal from an order overruling a demurrer to a complaint alleging, in effect, that the city was a municipal corporation, and that the defendant *Geilfuss* was its treasurer; that the plaintiffs were, and for more than ten years last past had been, the owners in fee of lot No. 9, in question, and that the same was joined on the south by lot No. 16, in question, and that said lots faced and abutted on Seventh street, between Chestnut and Prairie streets, in the city; that on July 14, 1853, the common council passed an ordinance whereby the grade and elevation of said streets were fixed and permanently established, and in pursuance of a resolution of the common council passed, they were thereafter graded up to said grade so established, and the cost thereof assessed against the lots (including those in question) abutting on said streets, and the same was paid by the owners thereof before the passage of the resolution hereinafter mentioned; that both of said lots are situated upon a side hill, and both were graded up to the said grade so estab-

lished, so that there was ample and sufficient drainage therefrom; and that until the change of the grade hereinafter mentioned, and the raising of the streets to such altered grade, there was no water on said lots, but the same ran off in consequence of the situation or lay of the land; that thereafter an ordinance was passed, changing and raising the grade of said streets, and thereafter the city, against the will and request of the plaintiffs, who were still the owners of both of said lots, raised the streets to such changed and altered grade, and the cost thereof in front of said lots was wrongfully and illegally assessed against said lots; that by reason of the raising of said streets to such new grade, and by the failure of the city to build proper sewers therein, the water, in consequence of the filling, was turned in upon and left standing upon such lots, and the same became the nuisance hereinafter mentioned; that in consequence thereof it became the duty of the city to pay the costs thereof, and to assess and pay the plaintiffs the damages therefor; but that the city had disregarded its duty, and neglected and refused to assess or pay the plaintiffs for any damage; that the water so turned in upon said lots became stagnant, and on July 3, 1878, the city declared the same a nuisance, and directed the plaintiffs to abate the same at their own expense within thirty days from the service of a copy of the resolution so declaring, and, in case of their neglect or refusal, directed the board of public works to cause the same to be abated at the expense of the lots; that the plaintiffs refused to abate the same at their expense, and on April 22, 1879, the board of public works contracted with one Forestal to abate the same by filling said lots; that Forestal accordingly did fill said lots, and the board in part payment therefor issued to him certificates therefor September 10, 1879, and the amounts of such certificates were carried into the tax list of that year, and assessed against said lots as a tax; that the

plaintiffs paid all other taxes against said lots for the year 1879; that on January 29, 1880, the city treasurer sold fractions of the lots to the city to pay said certificates of such tax sales, and that the city was still the owner and holder thereof; that, unless enjoined, the city treasurer would sell the certificates and then issue tax deeds thereon against the lots, and thus create a cloud on the plaintiff's title. The prayer was for an injunction, and to have the certificates set aside. To this complaint the defendants demurred, upon the grounds, in effect, that (1) there was a defect of parties defendant in not joining Forestal; (2) the complaint does not state a cause of action; (3) the plaintiff's only remedy was by appeal. The demurrer was overruled May 3, 1882.

*P. J. Somers*, City Attorney, for the appellants.

For the respondent there was a brief by *E. Mariner* and *F. M. Hoyt*, and oral argument by *Mr. Hoyt*.

CASSODAY, J. This court has already held, on demurrer, that the assessment against the lots for the cost and expense of raising the street to the changed and altered grade, and the sale of the lots for the same, and the certificates of sale issued thereon, were null and void. *Watkins v. Milwaukee,* 52 Wis., 98. It is now claimed that the city, by raising the streets to the new grade, and failing to build proper sewers therein, turned the water in and left it standing upon the lots, and the same became stagnant and a nuisance, and hence that the city cannot legally assess the lots for the cost and expense of abating the nuisance thus caused by itself. It is to be observed, however, that such nuisance was abated by filling the lots. Whether such filling of the lots was injurious or beneficial to the plaintiffs is not alleged in the complaint, but is left entirely to inference. It may well be inferred that if the lots were damaged by raising the streets above the surface of the lots, and thus turning the

surface water from the street upon the lots, then they must be correspondingly benefited by filling the lots, so that the surface water would run therefrom into the street.

In *Smith v. Milwaukee*, 18 Wis., 63, the assignee of several contractors sued the city, alleging that such contractors had done work upon lots in abating nuisances under regular contracts with the proper officers, by which they were to be paid in street commissioners' certificates, and that the nuisance so abated had, like that in *Weeks v. Milwaukee*, 10 Wis., 242, been caused solely by the act of the city in constructing streets around the lots, and neglecting to put in proper sewers, and hence claimed that the city was liable at law on the contracts for the amount of the assessments to pay for such work. The circuit court, however, refused to receive any evidence under the complaint, and dismissed the same upon the defendant's motion, on the ground that it did not state a cause of action, and the judgment thereon was affirmed by this court upon appeal. In construing the complaint, Mr. Justice PAINE, in giving the opinion of the court, concedes that, as a mere question of pleading, the averments were sufficient to bring the case within the decision in the *Weeks Case;* and then, in discussing the liability of the city directly to the contractor for the value of the work, under an implied power to make the contract, he refers to the clause of the charter (sec. 21, subch. 5, ch. 184, Laws of 1874) exempting the city from all liability, and said: "In the *Weeks Case* the point above referred to was very briefly considered, being a minor question in the case. There was no examination of the precise ground upon which the right of the owner to restrain the sale should rest. Now, after making such examination, though fully satisfied with the decision there made, that the owner has such right, yet we are also fully satisfied that it is a right of an *equitable character*, rather than one resting upon the technical invalidity of the

assessment at law.   In all such cases, there being a nuisance in fact upon the lot, the city has jurisdiction to abate it, and the proceedings being regular, the assessment could not be held void at law; and the right of the owner to restrain the sale grows out of the fact that it would be a wrongful use of a legal proceeding for the city to sell his lot to collect the assessment, when it was at the same time liable to refund the amount as damages for having caused the very nuisance abated.   It is in the nature of an equitable defense, resting upon the injustice of such a use of the proceeding at law, and should undoubtedly be disposed of according to established *equitable* principles."   Pages 67–8.

Manifestly it was the opinion of the court that the only equitable ground upon which the injunction against the enforcement of the assessment for grading in the *Weeks Case* could have been sustained was that it would have been inequitable to have allowed the city to sell the plaintiff's " lot to collect the assessment, when it was, at the same time, liable to refund the amount as damages for having caused the very nuisance abated."   But, in the case before us, the filling of the lots to correspond with the grade of the streets was not only an abatement of the nuisance, but, for aught that appears, a satisfaction of the damages sustained by raising the grade of the streets.   Compensation for such damages was secured to the lot owner by the charter, except in the cases therein provided.   Sec. 8, subch. 7, ch. 184, Laws of 1874.   In the absence of such a statute the lot owner would have been without remedy.   *Harrison v. Milwaukee,* 51 Wis., 662–4, and cases there cited.   But here, in the absence of any allegation in the complaint to the contrary, compensation for damages to the lots by raising the streets must be presumed to have been fully made by filling the lots.   For aught that appears, the lots are far more valuable than before the streets were raised, and the lots filled.   If the plaintiffs

have been actually benefited by raising the streets and filling the lots, then they are in no condition to complain in equity of an assessment to the amount of such benefits. It is a fundamental principle that whosoever seeks relief in equity must first be required to do what is equitable. As observed in *Smith v. Milwaukee, supra*, " the proceedings being regular, the assessment could not be held void at law." This being so, and the plaintiffs having failed to allege any cause of action entitling them to equitable relief, the second ground of demurrer should have been sustained.

For the reasons given, the order of the circuit court must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.*— So ordered.